2001 OK 115

## MULTIPLE INJURY TRUST FUND, Petitioner,

v.

## Elizabeth Ann PULLUM and The Workers' Compensation Court, Respondents.

No. 95,834.

Supreme Court of Oklahoma.

Dec. 11, 2001.

Georgiana Peterson of Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, OK, for petitioner, Multiple Injury Trust Fund.

Brandon J. Burton of Gravitt & Burton, Oklahoma City, OK, for respondent Elizabeth Ann Pullum.

LAVENDER, J.

¶ 1 Today's cause requires us to decide whether a Workers' Compensation Court (WCC) three-judge panel erred in ruling permanent total disability (PTD) benefits awarded to Elizabeth Ann Pullum (Pullum or claimant) from the Multiple Injury Trust Fund (Fund) [1] would "accrue" from the date of the panel's order. We hold the panel erred because 85 O.S. Supp.1995, § 172 (effective November 4, 1994)—the law when claimant's last job-related injury occurred and which unambiguously set the boundaries of Fund's PTD liability to her-required PTD benefits from Fund to begin on a date certain, said date being determined by a formula-based time period mandated to

elapse before commencement of weekly PTD payments by Fund.[2] We also hold the Court of Civil Appeals (COCA) erred in sustaining the panel's order based on the view a 1999 amendment to 85 O.S. Supp.1995, § 172 should be retroactively applied to allow for "accrual" of PTD benefits from the date of the panel's order. Neither the 1999 amendment of § 172 nor a further amendment in 2000 were intended to have retroactive sweep so as to allow for "accrual" of PTD benefits during the applicable lapse-time period where, as in Pullum's situation, the last compensable injury occurred during the effectiveness of the 1995 version of § 172. We finally decide that the lapse-time period mandated by § 172(E) [3] was intended by the Legislature to begin running from the last date temporary total disability (TTD) was paid to a claimant by the employer or insurer responsible for paying permanent partial disability (PPD) benefits for the claimant's last job-related injury, not from the date of the PPD joint petition lump-sum settlement between a claimant and his/her employer/insurer. Today's opinion is consistent with *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, 33 P.3d 302 and *Stidham v. Special Indemnity Fund*, 2000 OK 33, 10 P.3d 880, recent decisions of this Court, and *Barnhill v. Multiple Injury Trust Fund*, 2001 OK 114, 37 P.3d 890, also decided today.

## PART I. FACTS AND PROCEDURAL HISTORY.

¶ 2 It is uncontested that when claimant suffered her last work-related injury on or about August 25, 1998, she was considered a "physically-impaired person" under the Special Indemnity Fund Act (Act) [4] by virtue of previously adjudicated job-related injuries. Also undisputed is the fact claimant, her employer and employer's insurer settled Pullum's workers' compensation claim for the

---

1. The Multiple Injury Trust Fund (Fund) was formerly known as the Special Indemnity Fund. The name was changed in 1999. 85 O.S. Supp. 1999, § 173.

2. Title 85 O.S. Supp.1995, § 172, as the text notes, was the version of § 172 in effect on the date of claimant's last work-related injury and it

became effective on November 4, 1994. *See* 1994 Okla. Sess. Laws (Second Extra. Sess.), Ch. 1, §§ 42 and 56.

3. For the pertinent terms of 85 O.S. Supp.1995, § 172 (E), see note 7, *infra*.

4. 85 O.S.1991, § 171 et seq., as amended.

1998 injury by a joint petition settlement approved by the WCC in a February 2000 order. The settlement: 1) represented a determination claimant suffered a ceratin percentage of PPD from the 1998 injury and 2) was paid by employer/insurer in a lump sum.[5] After the settlement, as the Act allows, claimant sought PTD benefits from Fund, asserting combination of the last injury with her prior injuries rendered her permanently totally disabled.

¶3 In a November 2000 order the WCC trial judge ruled that combination of the previously adjudicated on-the-job injuries and the 1998 injury did render her permanently totally disabled.[6] The order also provides that Fund begin making weekly payments to claimant of $162.40 immediately, i.e. from the November 2, 2000 file date of the PTD order.

¶4 Fund appealed the trial judge's order to a WCC three-judge panel contending, in essence, 85 O.S. Supp.1995, § 172—particularly subsection (E) thereof-required ninety-one (91) weeks elapse from the date of the PPD joint petition settlement date (between claimant, her employer and employer's insurer) before Fund was responsible for paying

any PTD benefits to claimant.[7] In a January 2001 order the three-judge panel partially vacated the trial judge's November 2000 order, agreeing with Fund that ninety-one (91) weeks did have to elapse from the PPD joint petition settlement date before Fund was required to begin weekly PTD payments to claimant. The three-judge panel's order, however, also contained language which seemed to rule that benefits from Fund would "accrue" from the January 2001 date of the panel's order, i.e. that while PTD benefits from Fund were not immediately payable because the lapse-time period of subsection (E) had not yet expired, benefits were owed from the date of the panel's order. Fund appealed and the matter was assigned to Division IV of the Court of Civil Appeals (COCA).

¶5 The COCA sustained the panel's order. It basically held: (1) 1999 legislative amendment of § 172, including addition of the following last sentence to § 172(B), "Multiple Injury Trust Fund awards accrue from the file date of the court order finding the claimant to be permanently and totally disabled[ ]", authorized "accrual" of PTD

---

5. The settlement amount was $14778.40. Although we need not detail the amounts, the joint petition indicates part of the settlement sum went to pay claimant's attorney fees and the order approving the joint petition shows part went to pay a Special Indemnity Fund Tax. The joint petition also reflects claimant suffered from temporary total disability (TTD) from September 11 to November 8, 1998 and from April 22 to July 29, 1999 as a result of the August 1998 injury.

6. No need exists to detail the previous job-related injuries.

7. The pertinent terms of 85 O.S. Supp.1995, § 172 (B) and (E)—which (a) were the effective law at the time of claimant's last compensable injury and (b) address Fund's liability when separate, multiple on-the-job injuries result in PTD—provide as follows:

    B. If such combined disabilities constitute [PTD], as now defined by the Workers' Compensation Act, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury. In addition, the employee shall receive full compensation for his combined disability, as above defined, all of which shall be computed upon the schedule

and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment. After payments by the employer or his insurance carrier have ceased, the remainder of such compensation shall be paid out of the [ ] Fund ... in periodic installments. In [PTD] cases the same shall be paid in periodic payments, as set forth in Section 22 of this title, and shall not be commuted to a lump-sum payment. The compensation rate for permanent total awards from the [ ] Fund shall be the compensation rate for [PPD] paid by the employer in the last combinable compensable injury. Permanent total awards from the [ ] Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer.

    E. All weekly payments for [PPD] shall be paid before any claim for benefits against the [ ] Fund may be paid. In the case of a lump-sum [PPD] award or settlement, such award or settlement shall be divided by seventy percent (70%) of the employee's weekly wage up to a maximum of fifty percent (50%) of the state's average weekly wage, to determine the number of weeks which must elapse before a claim against the [ ] Fund may be paid.

payments from the time claimant was adjudicated totally disabled (i.e. the date of the PTD order) to the date the lapse-time period ended; (2) the 1999 amended version, as opposed to showing legislative intent to change 85 O.S. Supp.1995, § 172, was intended to clarify the law and, thus, should be retroactively applied; and (3) apparently, that the "accrued" amount was due claimant immediately after expiration of the lapse-time period. We also note the 1999 amended version of § 172 deleted the lapse-time formula contained in the 1995 version of § 172(E).[8].

■ ¶ 6 Before the COCA claimant relied on the further amendment of § 172 in 2000 to support her view she was, indeed, entitled to PTD benefits from the date of the panel's order. The COCA did not rely on the 2000 amendment of § 172 in reaching its decision, but the amendment had become effective (May 26, 2000) before either the trial judge or the three-judge panel reached their respective decisions.[9] Thus, although neither party appears to have cited to the 2000 amendment before the WCC, we reach its applicability here because where the public interest and welfare is involved, this Court has discretion to (i.e. we may) consider a theory not presented to the trial tribunal. *See Special Indemnity Fund v. Reynolds*, 1948 OK 14, 188 P.2d 841 (public interest and welfare certainly involved in application of workers' compensation laws which result in award against Fund).

¶ 7 As indicated in *Barnhill v. Multiple Injury Trust Fund, supra,* 2001 OK 114, at ¶ 7, 37 P.3d 890 at, three decisions of the COCA [two from Division I and one from Division II] are generally contrary to the COCA decision in the instant case. These cases hold the 1999 amended version of § 172 does not retroactively apply when a claimant's last job-related injury occurred before the amendment's effective date. *See Multiple Injury Trust Fund v. Hill,* 2001 OK CIV APP 8, 16 P.3d 1143; *Fry v. Multiple Injury Trust Fund,* 2000 OK CIV APP 129, 16 P.3d 1132; *Spurgin v. Multiple Injury Trust Fund,* 2000 OK CIV APP 85, 10 P.3d 240. Fund sought certiorari in this case, as it did in *Barnhill.* We previously granted certiorari here and in *Barnhill* to resolve the conflict in the COCA's decisions.

## PART II. STANDARD OF REVIEW.

■ ¶ 8 The issues here are legal ones concerning the statutory liability of Fund. Statutory interpretation is called for which requires a *de novo* review standard, i.e. a review in which an appellate court has plenary, independent and non-deferential authori-

---

8. 85 O.S. Supp.1999, § 172 (B) provides:

> B. If such combined disabilities constitute [PTD], as defined in section 3 of this title, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the employee shall receive full compensation for the combined disability, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of per cent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment. After all [PPD] payments by the employer or the insurance carrier of the employer have ceased, the remainder of the compensation shall be paid out of the [ ] Fund provided for in Section 173 of this title, in periodic installments. In [PTD] cases the same shall be paid in periodic payments, as set forth in Section 22 of this title, and shall not be commuted to a lump-sum payment. The compensation rate for permanent total awards from the [ ] Fund shall be the compensation rate for [PPD] paid by the employer in the last combinable compensable in-

jury. Permanent total awards from the [ ]Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer. [ ] Fund awards shall accrue from the file date of the court order finding the claimant to be permanently and totally disabled.

85 O.S. Supp.1999, § 172 (E) provides:

> "Reopening any prior injury claim other than the last employer injury claim shall not give a claimant the right to additional [ ] Fund benefits. All weekly payments by the last employer or the insurance carrier of the employer for [PPD] shall be paid before any claim for benefits against the [ ] Fund may be paid."

As can be seen, the formula-based lapse-time period was deleted from § 172(E).

9. *See* 2000 Okla. Sess. Laws, Ch. 248, § 12 for the further changes made to § 172. Section 12 was subject to an emergency clause (*see* 2000 Okla. Sess. Laws, Ch. 248, §§ 16 and 17) and was approved May 26, 2000. One cannot tell from the record whether either the Workers' Compensation Court trial judge or three-judge panel considered the 2000 amendment in reaching their respective decisions.

ty to reexamine a trial court's legal rulings. *Barnhill,* 2001 OK 114, at ¶ 8, 37 P.3d at 894.

**PART III. NEITHER THE 1999 AMENDMENT OF § 172 NOR ITS AMENDMENT IN 2000 WERE INTENDED TO HAVE RETROACTIVE SWEEP SO AS TO ALLOW FOR "ACCRUAL" OF PTD BENEFITS DURING THE APPLICABLE LAPSE–TIME PERIOD WHERE THE LAST COMPENSABLE INJURY OCCURRED DURING THE EFFECTIVENESS OF THE 1995 VERSION OF § 172.**

■ ¶ 9 The general rule is that the law in effect at the time of an employee's later/subsequent job-related injury is to be used in fixing Fund's liability. *Barnhill,* 2001 OK 114, at ¶ 9, 37 P.3d at 894; *Special Indemnity Fund v. Archer,* 1993 OK 14, 847 P.2d 791, 794–95. In *Barnhill* we held that 85 O.S. Supp.1995, § 172 (B) and (E), when read together, had the effect of ousting the WCC of authority to direct Fund to pay PTD benefits either (1) during the time period a claimant is receiving (from his/her employer or its insurer) **weekly** PPD compensation for the last work-related injury or (2) when the PPD compensation has been paid in a lump sum, **during an equivalent statutorily-prescribed/formula-based time period.** 2001 OK 114, at ¶ 14, 37 P.3d at 897. *Barnhill* recognized the lapse-time period mandated by § 172(E) was intended to require **a temporal equivalent** period of time to elapse in lump-sum joint petition PPD settlement situations as would pass or run when the employer/insurer responsible for paying PPD benefits for the last job-related injury did so in periodic weekly payments. 2001 OK 114, at ¶ 14, 37 P.3d at 897. Our interpretation of the 1995 version of § 172(B) and (E) was dictated by the unambiguous language of the legislative text, a text that unequivocally directed that Fund benefits for PTD were to begin **at a time certain,** said time governed either by the lapse-time of § 172(E) or the cessation of employer-paid weekly PPD benefits. *See Stidham v. Special Indemnity Fund,* 2000 OK 33, 10 P.3d 880. As such, no PTD benefits from Fund **were due or "ac**cruing" during the time an employer/insurer was actually paying weekly PPD benefits, **or during an equivalent period of time dictated by § 172(E).** Thus, under the 1995 version of § 172 no reasonable argument could be made for the legislative allowance of "accrual" or "build-up" of weekly PTD benefits from Fund during the lapse-time period. *Barnhill, supra,* 2001 OK 114, at ¶ 14, 37 P.3d at 897.

¶ 10 In that the 1995 version of § 172 so plainly expressed legislative intent, *Barnhill* rejected [consistent with our earlier rejection in *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, 33 P.3d 302] the argument the 1999 amendment of § 172 was intended to have merely clarified the earlier law. *Barnhill* also recognized that, were retroactive reach given to the 1999 legislation with the meaning ascribed by the COCA here and there—that PTD benefits are owed and "accruing" from the date of the PTD order rather than from the expiration date of the lapse-time period mandated by § 172(E)—a legislative intent to increase the amount of benefits over that which was recoverable from Fund under the applicable 1995 law would have to be found. Since no legislative intent to retroactively provide such increased benefits (a substantive alteration) could be discerned in the 1999 legislation, nor could it be said the Legislature had either expressly or by necessary implication provided for retroactive application, *Barnhill* rejected the notion retrospective sweep was legislatively intended. 2001 OK 114, at ¶ 15–16, 37 P.3d at 897–98. In the instant matter Pullum asserts a further amendment in 2000 suffices as a legislative expression of intent to provide retroactive sweep to the earlier 1999 amendment. We reject her position.

¶ 11 Pullum points to the following underlined language to § 172(B) which was added to the subsection by amendment in 2000:

1. For actions in which the subsequent injury occurred before June 1, 2000, if such combined disabilities constitute permanent total disability, as defined in Section 3 of this title, then the employee shall receive full compensation as provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the employee shall receive full compensation for the combined disability, as

above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of percent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment. After all permanent partial disability payments by the employer or the insurance carrier of the employer have ceased, the remainder of the compensation shall be paid out of the Multiple Injury Trust Fund provided for in Section 173 of this title, in periodic installments. In permanent total disability cases the same may be paid in periodic payments, as set forth in Section 22 of this title, or may be commuted to a lump-sum payment, by agreement of the claimant and the Multiple Injury Trust Fund. The compensation rate for permanent total awards from the Multiple Injury Trust Fund shall be the compensation rate for permanent partial disability paid by the employer in the last combinable compensable injury. Permanent total awards from the Multiple Injury Trust Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer. Multiple Injury Trust Fund awards shall accrue from the file date of the court order finding the claimant to be permanently and totally disabled.[10]

She asserts the additional language expresses legislative intent to make the last sentence of subsection (B)(1), added by the Legislature in 1999, retroactive or applicable to her situation even though her last compensable injury occurred during the effectiveness of the 1995 version of § 172. We disagree.

¶ 12 At the same time the "June 1, 2000" language was added to § 172(B), the Legislature added a completely new provision to the statutory scheme when separate, multiple on-the-job injuries result in PTD. Added by the 2000 legislation was § 172(B)(2) which provides:

2. For actions in which the subsequent injury occurred on or after June 1, 2000, if such combined disabilities constitute permanent total disability, as defined in Section 3 of this title, then the claimant shall receive full compensation as now provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the claimant shall receive full compensation for the combined disability, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable for the degree of percent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment and for any material increase resulting from the combination of such injuries. Payment for the degree of disability resulting from the material increase in disability resulting from the combination of injuries may be paid in periodic installments or may be commuted to a lump-sum payment upon agreement of the claimant and the employer or insurance carrier for the employer. The compensation rate for permanent total awards resulting from a combination of injuries shall be the compensation rate for permanent partial disability paid by the employer in the last combinable compensable injury. Permanent total awards resulting from a material increase in disability resulting from a combination of injuries shall be payable for a period of fifteen (15) years or until the claimant reaches sixty-five (65) years of age, whichever period is the longer. Such awards shall be paid from the date the court order finding the claimant to be permanently and totally disabled is filed.

¶ 13 As can be seen, the new provision dictates that when the subsequent injury occurs "on or after June 1, 2000" it is the last employer, rather than Fund, that is responsible for any increased disability resulting from combination of the last job-related injury and any preexisting impairment. In our view, the addition of the "June 1, 2000" date was necessary to set the boundary between continued Fund liability for PTD benefits and employer liability. In other words, it was intended to delineate the demarcation line whereby in regard to injuries occurring on or after the specified date Fund would

10. The 2000 amendment also changed § 172(B) to allow benefits recoverable from Fund—where combination of the multiple injuries result in PTD—to be commuted to a lump-sum payment by agreement of a claimant and Fund.2000 Okla. Sess. Laws, Ch. 248, § 12.

have no liability at all in PTD cases. We recognized this legislative purpose in *Autry v. Multiple Injury Trust Fund*, 2001 OK 79, ¶ 10, 38 P.3d 213. The amendments of 2000 concerning § 172(B) provided for the discontinuation of benefits from Fund for a material increase in combined disability resulting in PTD for injuries occurring on or after June 1, 2000 and also shifted liability for a material increase in disability caused by a combination of injuries resulting in PTD to the subsequent employer. *Autry*, 2001 OK 79, at ¶ 10, 38 P.3d at 216. *Autry* also recognized the 2000 amendment of § 172(B) was part of a legislative endeavor to provide for the dissolution of Fund which had begun the year before in 1999. 2001 OK 79, at ¶¶ 8 and 10, 38 P.3d at 215–216 To us, it is doubtful the Legislature meant to retroactively increase the amount of benefits a PTD claimant could receive from Fund at the same time it was setting the stage for complete dissolution of Fund liability. In case of doubt, the doubt should be resolved against retrospective effect. *Phillips v. H.A. Marr Grocery Company*, 1956 OK 104, 295 P.2d 765, 768.

¶ 14 Further, as in *Barnhill*, were we to afford retroactive sweep to the 1999 amendment with the meaning ascribed by the COCA and the WCC three-judge panel, Pullum would be entitled to increased PTD benefits from Fund over that to which she was entitled under the 1995 version of § 172. Pursuant to the panel's order of January 19, 2001, the ninety-one (91) weeks required to run from the PPD joint petition settlement date (February 2, 2000) would expire (i.e.end) on or about November 1, 2001. Yet, the panel ruled benefits would "accrue" or be owed from the date of the panel's order (January 19), approximately an additional nine and one-half months of benefits. Thus, affording the amendment retroactive sweep with the meaning given by the COCA (and the three-judge panel) would substantively increase Fund's ultimate liability to Pullum.[11] We can discern no concrete legislative inten-

tion to retroactively provide such increased benefits to someone who suffered their last job-related injury during the effectiveness of the law as it stood in 1995 (i.e. prior to the 1999 amendment) and we are unable to conclude the Legislature intended to so provide by its further amendment in 2000. As in *Barnhill*, without a plainly expressed or necessarily implied legislative intention to do so it would be improper for us to supply such retroactive reach. Compare *Special Indemnity Fund v. Dailey*, 1954 OK 167, 272 P.2d 395 (legislative intention to afford retrospective as well as prospective application where legislative amendment did not change liability of Fund and went merely to the method of payment).

¶ 15 Contrary to Pullum's assertion, the change made to § 172(B) in 2000 does not definitively express a legislative intent—as it pertains to the lapse-time period applicable to her PTD award against Fund—to afford the earlier 1999 amendment retrospective force. If the Legislature meant to retroactively alter the PTD liability of Fund as that liability was so clearly delineated under the language of 85 O.S. Supp.1995, § 172 (the law when Pullum's last compensable injury occurred) we conclude it would have done so with more clarity of purpose than is shown by either the 1999 or 2000 amendments under review. Accordingly, she is not entitled to PTD benefits from Fund during the lapse-time period of 85 O.S. Supp.1995, § 172 (E).[12]

**PART IV. THE WCC THREE–JUDGE PANEL ALSO ERRED IN CONCLUDING THE LAPSE–TIME PERIOD OF 85 O.S. SUPP.1995, § 172 (E) BEGAN TO RUN FROM THE PPD JOINT PETITION SETTLEMENT DATE RATHER THAN FROM THE LAST DATE TTD WAS PAID BY THE LAST EMPLOYER OR ITS INSURER.**

■ ¶ 16 In *Multiple Injury Trust Fund v. McGary*, 2001 OK CIV APP 68, 24 P.3d

11. Whether Fund payments begin in January 2001 or November 2001, claimant will be entitled to Fund benefits until she reaches the age of sixty-five (65) years old (assuming she survives to that age). Awards from Fund abate upon the death, from any cause, of the employee. 85 O.S. Supp.1994, § 172 (D); 85 O.S. Supp.1999, § 172 (D); 85 O.S. Supp.2000, § 172 (D). The Work-

ers' Compensation Court trial judge's November 2000 order reflects claimant was born in June 1946 (i.e. she is currently fifty-five (55) years old).

12. In today's pronouncement it is unnecessary for us to definitively reach the exact meaning of either the 1999 or 2000 amendments to § 172.

896, Division I of the COCA held the lapse-time period mandated by 85 O.S. Supp.1995, § 172 (E) was intended by the Legislature to begin running from the last date TTD was paid by the employer or its insurer in relation to the last compensable injury, rather than from the date of the PPD joint petition settlement for said injury. In this case, the three-judge panel decided the period ran from the latter date. *McGary* properly analyzed the issue and, thus, the panel also erred in such regard.

■■■ ¶ 17 As *McGary* correctly recognized, where a claimant suffers TTD (the healing period) followed by PPD, the right to payment of benefits for PPD arises when payments for TTD end. *McGary*, 2001 OK CIV APP 68, at ¶ 10, 24 P.3d at 899. An award for PPD does not become effective until expiration of the period of TTD. *Briscoe Const. Co. v. Listerman*, 1933 OK 198, 20 P.2d 560 *Third Syllabus by the Court*. Since the lapse-time period of the 1995 version of § 172(E) evinced a legislative intent to treat Fund claimant's alike—by providing a temporal equivalent period of time to elapse in lump-sum joint petition PPD settlement situations as would pass or run when the employer/insurer responsible for paying PPD benefits for the last job-related injury did so in periodic weekly payments—it is obvious to us, as it was to the COCA in *McGary*, that Fund's liability to pay is triggered by the fulfillment of the last employer's PPD obligation either by periodic or lump-sum payment. *McGary*, 2001 OK CIV APP 68, at ¶ 11, 24 P.3d at 899–900. To hold otherwise would treat Fund claimants accepting settlement of their last-injury PPD claims in a lump sum differently than those who receive weekly PPD payments from the last employer. *Id.* Therefore, in a situation controlled by the 1995 version of § 172(B) and (E) the lapse-time period should begin running with reference to the date the last employer paid TTD benefits. *McGary*, 2001 OK CIV APP 68, at ¶ 11–12, 24 P.3d at 899–900.

¶ 18 In the instant case, the February 2000 joint petition settlement indicates Pullum suffered TTD from September 11 to November 8, 1998 and from April 22 to July 29, 1999 as a result of her August 1998 injury. It would, thus, appear the lapse-time period of ninety-one (91) weeks should have begun running from the July 1999 date, which would result in commencement of Fund liability for PTD benefit payments at the end of April of 2001, rather than the start of November 2001 [ninety-one (91) weeks from joint petition settlement date]. However, because the issue of the proper beginning date for the lapse-time period has been raised by this Court in an effort to properly delineate Fund's statutory liability to this claimant and the parties have not heretofore raised the issue or, apparently considered any factual questions that may be involved with it, rather than set the date ourselves, we deem it more appropriate for the issue to be taken up in the WCC on remand.

## PART V.  SUMMARY.

¶ 19 The statute that set Fund's liability to claimant for PTD benefits was the one in effect on the date of her last job-related injury, 85 O.S. Supp.1995, § 172. That law mandated a statutorily-prescribed/formula-based lapse-time period before Fund was responsible for commencing periodic PTD benefit payments to her, a period that should have been ordered to commence running from the last date claimant's employer or its insurer paid her for TTD. The three-judge panel erred in allowing for the "accrual" or "build-up" of PTD benefits from the date of its order and the COCA erred in sustaining the panel's order. Neither the 1999 amendment of § 172, nor its further amendment in 2000, can be said to have retroactive sweep, so as to substantively increase Fund's liability to this claimant as that liability was delineated under the law in effect when she suffered her last compensable injury in August 1998.[13]

¶ 20 The Court of Civil Appeals' opinion is **VACATED.**  The Workers' Compensation

---

13. Although we disagree with the legal conclusion of the three-judge panel on the "accrual" issue, contrary to Fund's assertion on certiorari we do not believe the panel erred by considering

the "accrual" issue. Fund's appeal of the WCC trial judge's order to the panel concerned the extent of Fund's liability.

Court three-judge panel order of January 19, 2001 is **VACATED** and this matter is **REMANDED TO THE WORKERS' COMPENSATION COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

¶ 21 HARGRAVE, C.J., HODGES, LAVENDER, OPALA, SUMMERS and WINCHESTER, JJ., concur.

¶ 22 WATT, V.C.J., KAUGER and BOUDREAU, JJ., concur in result.